UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PATRICK HOUSTON,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:17-cv-207

Litkovitz, M.J.

**ORDER**

Plaintiff, Patrick Houston, brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in opposition (Doc. 12), and plaintiff's reply (Doc. 13).

**I. Procedural Background**

Plaintiff filed his applications for DIB and SSI in August 2013, alleging disability since May 10, 2010[1], due to degenerative disc disease, "psychiatrist problems," high blood pressure, and allergies. Plaintiff's applications were denied initially and upon consideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) John M. Prince. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On February 24, 2016, the ALJ issued a decision denying plaintiff's applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1] At the administrative hearing, plaintiff amended his alleged onset date to March 21, 2012 (Tr. 41), which is the date after an ALJ denied his prior application. (Tr. 69-87).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the

2

claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2014.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since May 10, 2010, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*)
>
> 3. The [plaintiff] has the following severe impairments: cervical spine degenerative disc disease with left arm radiculopathy, left carpal tunnel syndrome, mood disorder, and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: he can occasionally lift and carry up to 20 pounds with the right dominant upper extremity and frequently lift/carry 10 pounds with the right upper extremity. He is limited to lifting and/or carrying up to 10 pounds occasionally with the left non-dominant upper extremity. He can only use the left upper extremity occasionally for gross and fine manipulation. He could frequently climb ramps and stairs, but [never climb] ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, and crouch, but could never crawl. He can do no overhead reaching with the left upper extremity. He should avoid all exposure to extremes of cold and should avoid all exposure to unprotected heights. He would be able to handle brief and superficial contact with the public and coworkers and could handle ordinary levels of supervision found in a customary work setting. He could handle stresses of routine, repetitive, 3-4 step tasks. He could concentrate on, understand, and remember routine, repetitive, 3-4 step tasks

3

with uncomplicated instructions but could not do so with detailed, complex technical instructions.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] ... 1969 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the [plaintiff's] past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 10, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g).

(Tr. 16-28).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2] Plaintiff has past relevant work as a janitor, which he performed at a medium level of exertion. (Tr. 27).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light occupations such as advertising material distributor (43,000 jobs nationally), ticket taker (13,000 jobs nationally), router (42,000 jobs nationally), and gate guard (127,000 jobs nationally). (Tr. 28).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ failed to weigh the opinions of his treating physicians in accordance with the Social Security regulations and controlling case law; and (2) the ALJ's credibility determination was based on a selective consideration of the record and not supported by substantial evidence.

**1. Weight to the treating source opinions**

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. Medical opinions from treating sources are generally afforded more weight

5

than those from non-treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).

If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must weigh the factors specified in 20 C.F.R. §§ 404.1527(c) and 416.927(c) to decide what weight to give the opinion; specifically, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Gayheart*, 710 F.3d at 376. *See also Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 437 (6th Cir. 2018) (citing *Wilson*, 378 F.3d at 544) (emphasis added); *see also Blakley*, 581 F.3d at 408 ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527[(c)]"). The ALJ's decision "must contain specific reasons for the weight given to [a] treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. *See Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). This requirement serves two purposes: (1) "it helps a claimant to understand the disposition of her case, especially 'where

6

a claimant knows that his physician has deemed him disabled,'" and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Shields*, 732 F. App'x at 438 (citing *Wilson*, 378 F.3d at 544). The Sixth Circuit has made clear that remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" and when the ALJ has not "*comprehensively* set forth the reasons for the weight assigned to a treating physician's opinion." *Id.* (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)) (emphasis added).

On February 26, 2014, Dr. Steve Agabegi, M.D., plaintiff's treating neurosurgeon, completed a disability questionnaire. The questionnaire summarized objective findings previously set forth by Dr. Agabegi, which included MRI findings showing severe left foraminal stenosis at C6-7 and C4-5 and clinical findings of weakness in the left triceps and decreased grip strength on the left. The questionnaire also summarized plaintiff's subjective complaints as: "severe and unrelenting neck and left arm pain"; "a great deal of difficulty in maintaining focus, attention and concentration because of his pain"; and experiencing "quite a number of days in an average month where he can do little more than lie down until his most severe pain subsides a bit." (Tr. 813). Dr. Agabegi opined that in his judgment:

- the objective findings support the subjective complaints alleged by plaintiff;

- plaintiff would likely be absent from work 3 or more days per month due to particularly bad days with his pain;

- plaintiff would have significant impairment in terms of use of his left arm in activities such as lifting, carrying, pushing, pulling, reaching, grasping, holding, turning objects, etc.;

- plaintiff appeared sincere and forthright in his clinical presentation and complaints of pain and was not deliberately exaggerating the extent of his pain or malingering for secondary gain.

7

(Tr. 813). However, Dr. Agabegi did not believe it would be reasonable that plaintiff would be "off task" for as much as one-third of a normal work day because of difficulties with concentration, focus and attention with his pain. (*Id.*).

On October 19, 2015, Dr. Michael Bertram, M.D., plaintiff's treating pain management specialist, completed a questionnaire in which he indicated that plaintiff would have difficulties with concentration, focus, and attention due to pain, and thus would be "off task" for 15% or more of a typical day because of his pain. (Tr. 960). Dr. Bertram also opined that based on his treatment history with plaintiff and his knowledge of plaintiff's cervical spine problems, plaintiff would likely absent from full-time work 3 or more days per month due to particularly bad days with his pain. (*Id.*). Dr. Bertram stated that plaintiff has a significant impairment in using his left arm for activities such as lifting/carrying, pushing/pulling, reaching, etc. (*Id.*). Dr. Bertram also opined that plaintiff's left carpal tunnel syndrome, separate and apart from plaintiff's cervical spine impairment, would cause further significant problems with use of the left hand and fingers in terms of activities such as grasping, pinching, manipulating small objects, picking up or otherwise turning or manipulating small objects, etc. According to Dr. Bertram, plaintiff lacked what would be regarded as normal "bimanual dexterity." Finally, Dr. Bertram found plaintiff was sincere and forthright in his clinical presentation and complaints of pain and was not deliberately exaggerating the extent of his pain or malingering for secondary gain. (Tr. 961). Dr. Bertram also completed a "Listing 1.04 Questionnaire," which suggested that plaintiff meets the requirements of that Listing. (Tr. 962).

The ALJ neither discussed nor weighed Dr. Agabegi's treating physician opinion.

While the ALJ did discuss Dr. Bertram's decision, the ALJ assigned "only little weight" to the opinion of plaintiff's treating pain management specialist. The ALJ stated:

8

> Dr. Bertram opined the claimant would be off task 15% of more of a typical day because of pain; would be absent from work 3 or more days per month due to pain; and would have significant impairment in terms of use of his left arm/fingers/hand (B22F, B23F). Dr. Bertram also indicated the claimant's impairments satisfied the requirements of Listing 1.04 (B23F). Dr. Bertram has completed checkbox forms and failed to provide clinical signs and findings in support of his assessment. In fact, some of Dr. Bertram's own treatment records document full range of motion in the upper extremities and normal muscle strength and tone (B13F/4, for example). Additional examinations of record, including Dr. Sheridan's findings, document relatively normal strength and functioning as well. As such, little weight is given to these assessments.

(Tr. 25).

### a. Dr. Agabegi

Plaintiff contends the ALJ committed reversible error when he failed to even mention Dr. Agabegi's treating source opinion and weigh such opinion in accordance with the Social Security regulations and Sixth Circuit standards. (Doc. 9 at 10-12).

The Commissioner does not dispute that Dr. Agabegi was plaintiff's treating neurosurgeon whose opinion should have been weighed by the ALJ. (Doc. 12 at 5). Instead, the Commissioner argues that the ALJ's failure to discuss or weigh Dr. Agabegi's opinion is harmless error because his opinion is "so patently deficient that the Commissioner could not possibly credit it." *Wilson*, 378 F.3d at 547. The Commissioner alleges that Dr. Agabegi answered questions posed by plaintiff's attorney, which required a "yes" or "no" answer, and that such questions contained plaintiff's attorney's interpretation of the medical evidence. In addition, the Commissioner alleges that Dr. Agabegi did not support his answers with any independent explanation on the form. The Commissioner notes that the Sixth Circuit has found a treating source's opinion to be "patently deficient" when it consisted solely of checkboxes indicating various limitations and contained no explanation. (Doc. 12 at 5, citing *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016)). The Commissioner further

9

contends that even if Dr. Agabegi's opinions were not patently deficient, the ALJ's failure to weigh them would still be harmless because they do not directly contradict the ALJ's decision.

The ALJ committed reversible error when he failed to acknowledge or weigh the medical opinion of Dr. Agabegi. The Court cannot say that Dr. Agabegi's opinion is so patently deficient so as to constitute harmless error in this case. While Dr. Agabegi's opinion was submitted on a form drafted by plaintiff's counsel that required "yes" or "no" responses, the Sixth Circuit has not issued any per se rules regarding evidence submitted by a physician in the form of a check-the-box type. The Commissioner is correct that the Court of Appeals has cast doubt on the usefulness of such forms where a physician fails to give an explanation for the findings. In *Hernandez*, cited by the Commissioner, the Sixth Circuit determined that an ALJ's erroneous consideration of a treating physician's check-box analysis was harmless error where the form was unaccompanied by any explanation by the physician. 644 F. App'x at 474-75. The Court of Appeals found it "nearly impossible to analyze" whether that the treating physician's opinion was not inconsistent with the objective evidence because his check-box analysis was not accompanied by any explanation, such as whether the mental limitations alleged reflected the plaintiff's limitations when she is taking her medication or if these boxes reflect her limitations when she is not taking her medication. *Hernandez*, 644 F. App'x at 474.

Here, in contrast, the form completed by Dr. Agabegi contains the relevant objective findings and plaintiff's subjective allegations, albeit summarized and supplied by plaintiff's attorney, all of which provide a basis for Dr. Agabegi's opinion. Where, as here, the information in the form is supported by the objective and clinical evidence of record, the Court cannot say that Dr. Agabegi's opinion is so patently deficient that the Commissioner could not possibly credit it. For example, the Sixth Circuit recently determined that despite the shortcomings of the

10

questionnaire answered by the claimant's treating physician, the record nonetheless "does contain objective findings that are, at the very least, not inconsistent with the [treating physician's] assessment." *See Shields*, 732 F. App'x at 440. Unlike *Hernandez*, the Court here is able to discern that the objective evidence is not inconsistent with Dr. Agabegi's opinion. MRI findings in February 2011 showed degenerative disc diseases with multiple levels of severe bilateral foraminal stenosis (severe at C3/4, C4/5, and C6/7 and moderate to severe at C7-T1). (Tr. 791, 809-810). Clinical findings from 2013 and 2014 showed axial neck pain and mild left arm radiculopathy with 4/5 strength (Tr. 506), weakness (4/5 strength on the left as compared to the right upper extremities) (Tr. 507), mild left arm radiculopathy with 4/5 strength (Tr. 757), and "weakness in his left triceps for a long time" (Tr. 771). Dr. Agabegi referred plaintiff for cervical epidural steroid injections to treat his pain. (Tr. 403-407, 507-508, 518). In addition, as further explained below, Dr. Agabegi's opinion appears to be consistent with the opinion of plaintiff's other treating physician, Dr. Bertram. Given the MRI and clinical findings, as well as the consistency of Dr. Agabegi's opinion with that of Dr. Bertram, the Court cannot conclude that Dr. Agabegi's opinion was so patently deficient such that the ALJ's failure to acknowledge and weigh this treating physician's opinion constitutes harmless error. *See Shields*, 732 F. App'x at 440.

### b. Dr. Bertram

Plaintiff also argues the ALJ's decision to afford little weight to the opinion of Dr. Bertram is not supported by substantial evidence and fails to comport with the "good reasons" requirement set forth in *Wilson*. (*Id*. Doc. 9 at 13-22). The Commissioner contends the ALJ properly weighed Dr. Bertram's opinions because they were on checkbox forms and were unexplained; Dr. Bertram's examinations showed no significant abnormalities in plaintiff's arms;

and examinations by other medical sources showed no significant abnormalities. (Doc. 12 at 7-11).

The Court determines that the ALJ did not give "good reasons" for assigning Dr. Bertram's opinions "only little weight." (Tr. 25). Again, the ALJ discounted Dr. Bertram's opinion because of the "checkbox forms" he completed, which, for the reasons discussed above, is not a good reason under the circumstances of this case.[4] In addition, Dr. Bertram in fact provided specific clinical signs and findings on the "Listing 1.04 Questionnaire" form, which was completed on the same date as the medical assessment form. These included findings of reduced extension and left rotation of the spine, motor loss at the left C6 pronator teres muscles, and reflex loss of the C6 brachioradialis. (Tr. 796). These reported findings are directly reflected in the progress notes of Dr. Bertram, who treated plaintiff on referral from Dr. Agabegi.

On April 15, 2014, plaintiff presented with chronic neck pain radiating down the left upper extremity. Plaintiff reported that he had neck pain across his neck, worse on the left side and worse with any movements or activities; he experienced numbness and tingling down his left upper extremity; and he had a secondary complaint of back pain that radiated down the right leg. (Tr. 792). On examination, plaintiff exhibited a normal gait pattern, had full range of motion of the shoulders, and normal range of motion of cervical spine with complaints of neck pain in the midline with all motions and directions. With Spurling's maneuver he radiated to the shoulder but not further down. Dr. Bertram also found tenderness around left paraspinals, facet joints, trapezius, levators scapula and infraspinatus muscles. Manual muscle testing of the major

---

[4] To be sure, the Sixth Circuit has noted the shortcomings of using a form drafted by the claimant's counsel, which is largely restricted to checking "yes" or "no" in response to narrative-style questions, to report a treating physician's opinion. *Shields*, 732 F. App'x at 440. Nevertheless, because the record contains objective and clinical findings that are not inconsistent with the treating physician's assessment, the Court cannot conclude the ALJ's decision to give only little weight to Dr. Bertram's opinion is supported by substantial evidence. *Id.*

muscle groups of the upper limbs were graded as 5/5 with normal tone and bulk except left pronator teres 5 minus/5. Plaintiff's reflexes were reduced but absent at the left brachioradialis; he exhibited decreased sensation in left upper extremity; and he had normal distal pulses. Dr. Bertram assessed degeneration of the cervical intervertebral disc and spinal stenosis in cervical region. (Tr. 794). Dr. Bertram discussed the possibility of epidural injections to treat plaintiff's pain and recommended an electrodiagnostic study (EMG) in view of plaintiff's multiple levels of foraminal stenosis. Dr. Bertram noted that plaintiff's symptoms appeared to be C6 related and an EMG study would confirm radiculopathy versus nerve irritation. (*Id.*).

Plaintiff underwent the EMG on April 29, 2014, which showed chronic left C6 radiculopathy along with moderately severe left carpal tunnel syndrome. (Tr. 806-09).

Plaintiff received the first of his epidural injections on May 14, 2014. (Tr. 796). When seen on June 3, 2014, plaintiff reported he had over a two-week period of greater than 80% improvement from the epidural. (Tr. 798). His clinical examination revealed findings similar to those on his previous exam. (Tr. 799). Dr. Bertram recommended a cervical epidural at left C5-6 and physical therapy. (*Id.*). Plaintiff underwent the epidural on June 18, 2014. (Tr. 801). During his follow up exam on July 14, 2014, Dr. Bertram reported that plaintiff's improvement with the epidurals was temporary and he continued to have ongoing left arm pain with numbness, tingling, and weakness. (Tr. 803). Therapy was partially helpful and plaintiff reported trouble sleeping. (Tr. 803). Plaintiff exhibited clinical findings similar to his previous two examinations, except that he had decreased sensation in the left upper extremity nondermatomal. (Tr. 804). Dr. Bertram changed plaintiff's medications and recommended proceeding with an additional cervical epidural at left C5-6. (Tr. 805).

When seen on March 30, 2015, plaintiff exhibited additional clinical findings indicative of his chronic neck and left upper extremity pain, including reduced range of motion of the cervical spine, weakness associated bilaterally with the deltoid muscle, biceps and left triceps, and pronator teres muscle. His reflexes "were reduced bilaterally brachioradialis and left triceps." (Tr. 955). Sensory examination showed decreased sensation in the left upper extremity and C6, C7, and C8 distribution patterns. Plaintiff continued with positive Tinel's and Phalen's signs at the left wrist. (*Id.*). Dr. Bertram assessed ongoing significant degeneration of the cervical spine and requested an updated MRI due to plaintiff's "ongoing symptoms including occasional urinary difficulty and balance difficulty." (Tr. 956).

Plaintiff underwent a carpal tunnel injection on April 16, 2015. (Tr. 952).

An MRI on May 1, 2015 showed disc material and moderate bilateral uncovertebral spurring left greater than right at C5-6 which had resulted in moderately severe left and moderate right neuroforaminal narrowing. (Tr. 958-59).

On subsequent examinations in 2015, plaintiff exhibited reduced range of motion of the cervical spine; bilateral weakness with his deltoid, biceps, left triceps and pronator teres; reduced reflexes bilaterally in the brachioradialis and in the left triceps; and decreased sensation in the left upper extremity in the C6, C7, and C8 distribution patterns. (Tr. 949, 971). Dr. Bertram also found ongoing evidence of the severe left carpal tunnel syndrome, namely positive Tinel's and Phalen's signs. (*Id.*).

Against this backdrop, Dr. Bertram provided his medical assessment. As with Dr. Agabegi, the record "does contain objective findings that are, at the very least, not inconsistent with the [treating physician's] assessment." *See Shields*, 732 F. App'x at 440. Therefore, the

fact that Dr. Bertram's opinions were conveyed on a checkbox form is not a good reason for discounting his opinion.

In discounting Dr. Bertram's opinion, the ALJ additionally noted that "some of Dr. Bertram's own treatment records document full range of motion in the upper extremities and normal muscle strength and tone." (Tr. 25, citing exhibit B13F/4). However, this recitation of the evidence is incomplete. The April 15, 2014 progress note cited by the ALJ shows "normal range of motion of cervical spine *with complaints of neck pain in the midline with all motions and directions. With Spurling's maneuver he radiates to the shoulder but no further down. Tenderness around left paraspinals, facet joints, trapezius, levator scapula and infraspinatus muscles*." (Tr. 794) (emphasis added). In terms of strength, Dr. Bertram found "manual muscle testing of the major muscle groups of the upper limbs were graded as 5/5 with normal tone and bulk *except left pronator teres 5 minus/5*." (Tr. 794) (emphasis added). Dr. Bertram also reported clinical findings of reduced reflexes and absent reflexes at the left brachioradialis and decreased sensation in the left upper extremity nondermatomal, which the ALJ failed to note. (Tr. 25, Tr. 794). *See Jones v. Sec'y*, 945 F.2d 1365, 1369-70 (6th Cir. 1991) (reliable objective evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm and sensory and motor disruption). The ALJ's incomplete recitation of the evidence is not a good reason to discount Dr. Bertram's opinion.[5]

Finally, the ALJ discounted Dr. Bertram's opinion because "[a]dditional examinations of record, including Dr. Sheridan's findings, document relatively normal strength and functioning

---

[5] The Commissioner contends that the ALJ's omission of certain clinical findings from April 2014 is harmless error because the ALJ accounted for any weakness in plaintiff's left arm in the RFC finding. (Doc. 12 at 9). This argument ignores all of the clinical and objective findings set forth in the record subsequent to the April 2014 visit, which lend even further support to Dr. Bertram's opinion and were not discussed by the ALJ in weighing the treating physician's opinion. The Court, therefore, is not persuaded that the ALJ's omissions constitute harmless error.

15

as well." (Tr. 25). However, Dr. Sheridan's consultative examination was done in 2013, before plaintiff's 2014 EMG and 2015 MRI and two years before Dr. Bertram issued his opinion. As discussed above, the record reflects additional objective and clinical findings showing a progressive worsening of plaintiff's condition after 2013 and Dr. Sheridan did not have the benefit of such findings. *See Gayheart*, 710 F.3d at 377 ("Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources."). In addition, strikingly absent from the ALJ's analysis of the weight to afford Dr. Bertram's opinions are the 2015 MRI findings and the April 2014 EMG findings which support an objective basis for plaintiff's pain and for Dr. Bertram's medical assessment. The reasons posited by the ALJ are not "good reasons" for only affording little weight to the opinion of Dr. Bertram.

Moreover, there is no indication in the ALJ's decision that he considered the 20 C.F.R. §§ 404.1527(c) and 416.927(c) factors when weighing the opinion of Dr. Bertram. Under the Social Security regulations, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406 (citing former 20 C.F.R. § 404.1527(d)). The ALJ's failure

16

to consider the regulatory factors is particularly troubling here in light of Dr. Bertram's area of specialization, length of treatment relationship with plaintiff, regular examinations of plaintiff, and reliance on objective MRI and EMG evidence. The ALJ's failure to consider the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6) in determining what weight to give Dr. Bertram's opinion and his failure to provide "good reasons" in discounting Dr. Bertram's opinion requires a reversal and remand for further proceedings. *See Blakley,* 581 F.3d at 407 (ALJ's failure to adequately explain reasons for weight given a treating physician's opinion *"denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record."). Plaintiff's first assignment of error is sustained.

**2. Whether the ALJ erred in discounting plaintiff's credibility.**

Plaintiff also alleges the ALJ erred in assessing his credibility. As stated above, the undersigned orders that this matter be remanded because the ALJ failed to provide good reasons for the weight given to the treating physicians' opinions. As resolution of this issue on remand may impact the remainder of the ALJ's sequential evaluation, including his assessment of plaintiff's credibility, it is not necessary to address plaintiff's credibility argument. *See Trent v. Astrue,* No. 1:09cv2680, 2011 WL 841529, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's argument had merit, the outcome would be the same, *i.e.*, a remand for further proceedings and not an outright reversal for benefits.

**III. This matter is reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged March 21, 2012 onset date. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171,

176 (6th Cir. 1994). This matter is reversed and remanded for further proceedings with instructions to the ALJ to re-weigh the opinion evidence from plaintiff's treating physicians in accordance with the treating physician rule; to reconsider plaintiff's credibility and RFC; and for further medical and vocational development as warranted.

**IT IS THEREFORE ORDERED THAT:**

The decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 9/29/18

Karen L. Litkovitz
United States Magistrate Judge